## NEUMANN v. BASTIAN–BLESSING CO. et al.

### Civil Action 46 C 440.

District Court, N. D. Illinois, E. D.

Jan. 24, 1947.

Lannan, La Velle & Hill, of Chicago, Ill., for plaintiff.

Poppenhusen, Johnston, Thompson & Raymond, of Chicago, Ill., for defendant.

LA BUY, District Judge.

A motion to dismiss Count I of the original complaint was previously sustained by this court and plaintiff has now filed his amended complaint for the purpose of showing jurisdiction under the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note, to sustain his claim for treble damages set forth in Amended Count I. Defendant has filed his motion to dismiss Count I and renewed its motion to dismiss the other counts of the amended complaint.

Plaintiff, Othon Neumann, alleges for a number of years he acted as the exclusive agent and distributor for various American companies in the export and sale of gas regulating equipment into Mexico. He alleges he was exclusive agent for the defendant, who is the largest manufacturer in the world of gas regulating equipment; that he was also exclusive agent of the Pressed Steel Tank Company of Milwaukee, Wisconsin, the largest and principal manufacturer of portable cylinders used in gas regulating equipment; that he was also exclusive agent for the Hamler Boiler and Tank Company of Chicago, the largest manufacturer of storage tanks suitable for bottled gas service companies, and the National Cylinder Gas Company, the sole world distributor of welding and cutting equipment manufactured by the defendant; that plaintiff handled 80% of the trade in such equipment in Mexico; that defendant and its vice-president, Mills, together with unknown confederates, by means of coercion, misrepresentation and unlawful persuasion induced the Pressed Steel Tank Company on June 15, 1943, the Hamler Boiler and Tank Company on March 17, 1944, and the National Cylinder Gas Company on March 13, 1944, to cancel their employment contracts with plaintiff as well as cancelling its own contract with plaintiff on December 31, 1943, all in pursuance of a plan or conspiracy in restraint of trade.

■ Section 1 of the Sherman Act prohibits a monopoly as a result of conspiracy or combination causing a substantial dominance or exclusion of competitors, and Section 2 prohibits monopolizing, i. e., the acquisition of power to fix prices, limit production or deteriorate quality. The allegations of amended paragraphs 7, 39, and 40 indicate reliance by plaintiff upon a violation of Section 1 of the Act, with the exception of the general charge in paragraph 65 stating that because of such domination "defendant has been able to and has increased the price of its said products in such foreign trade." This latter is a mere legal conclusion of the pleader and no facts appear in any count to support it. It is necessary for plaintiff to allege with a degree of certainty and definiteness the conspiracy or combination to restrict free competition in the sale and distribution of gas regulating equipment in order to state a cause of action.

■ The combinations and contracts in restraint of trade which were intended to be prohibited by the Sherman Act are combinations which are directed to the control of the market by suppression of competition in the marketing of goods and services, the effect of which is adverse to the consumer and the public. The practices prohibited by the Act are those that have an evil effect upon the public generally, as distinguished from purely personal or private injury.

The following are the material paragraphs of Amended Count I which the court has considered in determining the sufficiency of the complaint to maintain an action under the Sherman Anti-Trust Act:

"39. Accordingly defendants concluded that, if plaintiff were allowed to continue unmolested in his business as aforesaid after the proposed cancellation of his contract with the corporate defendant, he and his business would constitute an established, active, efficient and readily available channel and instrumentality for carrying on with Mexico, by the corporate defendant's American competitors, of foreign trade in gas regulating equipment made in the United States; that such competitors, by engaging plaintiff as their agent or distributor or both, would be able to, and would, offer the corporate defendant vigorous competition in the foreign trade with Mexico in such equipment; and that any such competition would jeopardize, and be hazardous to, the prosperous and substantial volume of such foreign trade that the corporate defendant then controlled and enjoyed and that it in the future wished to maintain and increase. In this connection, the de-

fendant well knew, and it was a fact, that various American companies besides the corporate defendant manufactured and sold gas regulating equipment and either had secured a small part of the foreign trade with Mexico in such equipment or had attempted from time to time to do so and were ready, willing, and under normal competitive conditions would be able by the means aforesaid, to secure a share of such foreign trade or, if they already had a share, to increase their proportionate share thereof.

"40. Unwilling to risk such prospective competition or the increase thereof or the loss in profits that might result therefrom, and coveting the domination, control and monopoly of the foreign trade with Mexico in such equipment, the corporate defendant and the defendant Mills, in Chicago, Illinois, on or about May 1, 1943, agreed, confederated, combined and conspired together and with others unknown, the latter hereinafter called their confederates, unlawfully, by the means hereinafter set forth, to dominate, control and monopolize, in favor of the corporate defendant, the foreign trade with Mexico in such equipment, and in each and every type thereof, and to exclude competitors from such foreign trade and from increasing any share competitors might then have therein, all in violation of the Act of Congress of July 2, 1890 entitled 'An Act to protect trade and commerce against unlawful restraints and monopolies' (15 U.S.C.A. 1–7, 15 [note]), otherwise known as the Sherman Anti-Trust Act.

"41. The defendants and their confederates then and there agreed upon and adopted certain means and methods by which they agreed, intended and planned to carry out and execute their said conspiracy and to attain and accomplish the purposes and objects thereof as above stated. One of the means, among those so agreed upon and adopted, was to destroy the business of plaintiff as an established, active, efficient and readily available channel and instrumentality for the carrying on of foreign commerce with Mexico in gas regulating equipment. Other means so agreed upon and adopted were to destroy his business as an agent and distributor for the sale in and importation into Mexico of American made gas regulating equipment and related apparatus; * * *"

Plaintiff predicates his claim upon the fallacious assumption that his medium of sale and distribution is the sole and only effective means of marketing competitors' products; that he is the only stabilizing influence in such free distribution and competition; and that his removal necessarily results in a monopoly by defendant. However, exclusion of plaintiff as an intermediary in the distribution of the products is no indication that American competitors were deprived of means to obtain distribution of their product in Mexico. It does not follow that all companies must use plaintiff's agency. Such a discontinuance of this medium of distribution might have been replaced with other distributors or with direct contact with consumers and the public's opportunity to purchase these products may have continued as effectively and conveniently as before.

The fact that plaintiff handled 80% of the sales of such equipment in Mexico could readily stem from the fact he was agent for the four largest companies engaged in the manufacture of gas regulating equipment and related apparatus. Defendant, as plaintiff alleges, is the world's largest manufacturer of such products and as such undoubtedly has a monopoly on its product. There is no allegation that American competitors, other than the four named, discontinued their business or curtailed their business in Mexico because of the defendant's activities. If the cancellation of his contracts by the four named companies affected his business adversely it is because these four handled the greatest volume. No facts are alleged from which the court can construe the effect of such alleged conspiracy to result in an injury to the public since it is not stated that the public has been deprived of the continued sale and distribution of such equipment or suffered any other injury from the defendant's alleged wrongful acts, or that there was such a restraint on competition as to violate the Act.

It is alleged the conspiracy existed between the defendant corporation and its vice-president, Mills, and other unknown

450

confederates. A conspiracy must exist between two or more persons and the general principle is that the acts of the agent are the acts of the corporation. As was stated in Arthur v. Kraft-Phenix Cheese Corporation, D.C. Md., 1937, 26 F.Supp. 824, 830:

"And the inclusion of the defendant's agents in the alleged conspiracy would seem to be only the basis for a technical rather than a substantial charge of conspiracy because obviously the agents were acting only for the defendant corporation."

It has been stated that litigation should not be decided on pleadings only. Cases of this nature result in long and costly trials, and if it appears reasonably certain after due consideration of the questions involved that plaintiff cannot sustain his claim, it is the duty of the court to dismiss the action. The court therefore allows defendant's motion to dismiss Amended Count I of the complaint. As to the other counts, the court denies defendant's motion and plaintiff may proceed thereon for redress of the alleged personal wrongs occasioned him.

An order not inconsistent with the above rulings may be presented for entry by the court.