**REVERE CAMERA CO. v. EASTMAN KODAK CO. et al.**

No. 48C50.

United States District Court
N. D. Illinois, E. D.

Oct. 5, 1948.

Zebel & Gritzbaugh, of Chicago, Ill., for plaintiff.

Charles O. Parker, of Chicago, Ill., Donovan, Leisure, Newton, Lumbard & Irvine, by James R. Withrow, Jr., all of New York City, Nixon, Hargrave, Middleton & Devans, by Arthur L. Stern, all of Rochester, N. Y., and Ira C. Werle, of New York City, for defendants.

SULLIVAN, District Judge.

This action is brought under Sec. 15 of Title 15 U.S.C.A., known as the Sherman Act, and Sec. 26, Title 15, known as the Clayton Act, for treble damages and injunctive relief based upon alleged violations by Eastman Kodak and Eastman Stores of Sections 1, 2 and 3, Title 15, Sherman Law, and Sections 13 and 14, Title 15, Clayton Act.

The complaint was filed on January 14, 1948. Paragraph 1 thereof sets out the facts which confer jurisdiction on this court.

Paragraph 2 alleges that Revere is engaged in the manufacture and sale of amateur motion picture cameras, projectors and film splicers, and in the sale of certain accessories and equipment therefor manufactured by others.

Paragraph 3 alleges that "Revere brings this suit on its own behalf and in the public interest in that the acts complained of are injurious to the interests and welfare of the

public, and the equitable relief sought, if granted, will inure to the benefit of the public generally."

Paragraph 4 alleges that Eastman Kodak is also engaged in the manufacture and sale of like items, and in addition manufactures and sells amateur motion picture film and maintains stations at which photographers may have exposed film processed or developed.

Paragraph 5 alleges that Eastman Stores is a wholly owned subsidiary of Eastman Kodak, and is engaged in transacting business as a retail outlet for Eastman Kodak products.

Paragraphs 6 and 7 set out the interstate and foreign commerce carried on by both Revere and Eastman Kodak.

Paragraph 8 outlines the growth and importance of the photographic industry.

Paragraphs 9, 10, 11, 12 and 13 outline the history, scope and character of the business and operations of Eastman Kodak.

Paragraphs 14, 15, 16, 17 and 18 describe the photographic goods involved in this suit.

Paragraphs 19 and 20 describe the sources of supply of motion picture film.

Paragraph 21 outlines Revere's history in the business, alleging "that prior to September 1939, Revere had manufactured amateur motion picture cameras of the single 8 mm. spool type and that it was able to offer to purchasers of its cameras an adequate supply of black and white film for use therein. This film was manufactured and packaged by Agfa-Ansco Corporation, a film manufacturer, and sold by Revere under its own name."

Paragraph 22 alleges the offenses complained of as follows:

Eastman individually, and as parent of the corporate structure hereinbefore mentioned, and in concert with one or more of its said subsidiaries including Stores ( Ill.) and with others, has

"(a) Acted, confederated, conspired and combined, with said subsidiaries and said others, to do the unlawful acts and things set forth in this complaint, and continues so to do.

"(b) Contracted, combined and conspired with one or more of its said subsidiaries, including Stores (Ill.), and with others to restrain trade or commerce in motion picture film, cameras and projectors, for amateur use, and accessories and supplies therefor, in violation of the provisions of Sections 1 and 3 of the Sherman Act.

"(c) Monopolized and attempted to monoplize, combined and conspired to monopolize and to attempt to monopolize, a part of the trade or commerce among the several states of the United States, and with foreign nations, in motion picture film, cameras, and projectors, for amateur use, and accessories and supplies therefor, in violation of the provisions of Section 2 of the Sherman Act.

"(d) Combined, and conspired, with the intent of using the monopoly established by them in the manufacture, distribution and sale of color film to attempt to establish a monopoly, and to restrain trade and commerce, in the production, distribution and sale of motion picture cameras, and accessories, equipment and supplies therefor.

"(e) Discriminated in price between different purchasers of motion picture film, cameras, and projectors, for amateur use, and accessories, equipment, and supplies therefor, of like grade and quality, in commerce, and for use, consumption or resale within the United States or a Territory thereof, or the District of Columbia, and where the effect of such discrimination may be substantially to lessen competition or to tend to create a monopoly in the manufacture, sale and distribution of one or more of said items, or to injure, destroy or prevent competition with Eastman, and one or more of its said subsidiaries, including Stores (Ill.), in violation of Section 2 of the Clayton Act.

"(f) It has unlawfully discriminated in favor of one purchaser against another purchaser of amateur picture film, cameras, and other equipment, supplies and accessories bought for resale, by contracting to furnish or furnishing or by contributing to the furnishing of services or facilities connected with the processing, handling,

sale or offering for sale of such commodities upon terms not accorded to all purchasers on proportionately equal terms.

"(g) In the course of commerce, leased or made a sale or contract for sale of motion picture film, cameras, projectors, for amateur use, and accessories and supplies therefor, for use, consumption or resale within the United States, or a Territory thereof, or the District of Columbia, or fixed a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement or understanding that the lessee or purchaser thereof shall not use or deal in the goods, or merchandise, of a competitor or competitors of Eastman, where the effect of such lease, sale, or contract for sale of such condition, agreement or understanding may be, or has been, to substantially lessen competition or tend to create a monopoly in commerce in such items, in violation of Section 3 of the Clayton Act."

Paragraph 23 outlines the relations of the parties and alleges "that in or about August, 1939, Eastman importuned Revere to abandon the manufacture and sale of its single 8 mm. cameras, to cease the sale of single 8 mm. film, and to enter into a patent license agreement with Eastman to make and sell an amateur motion picture camera under certain of Eastman's patents, adopted for use with Eastman's double 8 mm. film wound on patented spools manufactured by Eastman." It is further alleged that Eastman represented to Revere that if Revere would agree to enter into such license agreement, Eastman would supply Revere with patented rewind spools to equip the cameras manufactured by it thereunder and, further, that Eastman would at all times provide purchasers of such cameras from Revere with an adequate supply of double 8 mm. film and suitable facilities for developing or processing the same throughout the United States and abroad.

Paragraph 24 alleges that Revere, relying upon said representations, on or about September 8, 1939, entered into a license agreement with Eastman by the terms of which Eastman granted to Revere a limited non-exclusive royalty-free license to make, use and sell double 8 mm. motion picture cameras under Eastman patents. It is further alleged that while such license agreement provided that "nothing herein shall create any obligation of any kind on the part of Eastman to market or continue to market any particular type or kind of film" it was intended by the parties thereto that Eastman would, and Eastman by said agreement undertook during the life of said agreement to manufacture an adequate supply of film suitable for use in cameras made by Revere thereunder and facilities for processing and developing said film so used, and to refrain from doing anything to hinder Revere in the beneficial enjoyment of such agreement.

Paragraph 25 sets out that immediately upon entering into said license agreement Revere abandoned the manufacture of single 8 mm. film, redesigned its camera and manufacturing equipment, and under its license began to manufacture and sell a new moderately priced double 8 mm. camera for use with film manufactured by Eastman. That in making this change Revere was compelled not only to redesign its product, but also to reorganize its plant at great expense.

Paragraph 26 alleges that pursuant to the terms of the agreement, Revere equipped each of its double 8 mm. cameras with one empty spool purchased from Eastman, so that Eastman thereby had continuous information as to the number of cameras manufactured and sold by Revere.

Paragraph 27 alleges that Revere's double 8 mm. spool type cameras manufactured and sold under the license agreement with Eastman attained great popularity and that Revere's sales of such cameras now exceed those of all other manufacturers combined.

Paragraph 28 sets out that in 1941 Revere designed and built a double 8 mm. magazine camera and exhibited a model thereof to Eastman, and that Eastman charged that it constituted an infringement of certain of Eastman's patents. After extended correspondence Eastman proposed that Revere accept a license under certain Eastman patents, and that Revere manufacture and sell, pursuant to such license, its magazine camera designed to accommodate magazine and film made by Eastman. In order to prevent dealers in its products from being

involved in litigation, Revere brought a suit against Eastman in this court, which resulted in a decree in its favor, whereupon Revere enlarged its production of double 8 mm. camera of the magazine type.

Paragraph 29 alleges that due to Eastman's dominant position in the manufacture and sale of motion picture film, purchasers of Revere's cameras are dependent upon Eastman for supplies of film.

Paragraph 30 alleges that in connection with the manufacture and sale of its cameras Revere also manufactures motion picture projectors and film splicers.

Paragraph 31 sets out the competition which exists between Revere and Eastman as well as certain of Eastman's subsidiaries.

Paragraph 32 sets out the growth of Revere's sales, based upon which Revere in 1946 enlarged its equipment and facilities for an estimated production greatly in excess of its 1946 sales, and which it would have realized but for Eastman's unlawful acts as set forth in this complaint.

Paragraph 33 alleges that notwithstanding the obligations of Eastman under its license agreement with Revere to furnish Revere camera users with an adequate supply of film, purchasers of Revere cameras, in recent months, have had increasing difficulty in obtaining film for use therein. It is alleged that many dealers in Revere products have cancelled orders for cameras, projectors and splicers, or reduced the volume thereof because of their inability to obtain film with which to supply their customers for use in Revere cameras, and that the inability of the dealers and users of Revere cameras to obtain film for use therein is due to the unlawful acts of Eastman as stated in the complaint.

Plaintiff, in its prayer for relief, asks that defendants be found guilty of the unlawful acts charged and that damages be assessed in the sum of $1,000,000 and that said damages be trebled, and that plaintiff have judgment against defendant for $3,000,000 plus costs of suit and reasonable attorney's fee. That defendants be adjudged to have violated the anti-trust laws of the United States as charged in the complaint, and that each of them, and their officers, directors and agents be en-joined permanently from continuing to so violate said anti-trust laws. That defendant Eastman be commanded to so direct and control its subsidiaries as to prevent them from engaging in all unlawful acts as set out in this complaint, and particularly from conspiring and combining among themselves or with others to restrain trade or commerce in motion picture films, cameras, projectors, splicers, and accessories and equipment therefor. That the court decree that Eastman disclose all formulae, processes and "know-how" within the knowledge of Eastman and license all patents and patent applications owned or controlled by Eastman pertaining to the manufacture of amateur motion picture color film to any applicant upon such terms as the court may deem just. And that plaintiff have such other and further relief as to the court seems just and proper.

Defendants, pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure, 28 U.S.C.A., have moved: (1) To dismiss the complaint insofar as it purports to set forth a claim on behalf of the public, and seeks relief therefor, on the ground that plaintiff has no capacity, standing or right to assert such a claim. (2) To strike from the complaint under Rule 12 (f) all allegations purporting to set forth a claim on behalf of the public and seeking relief therefor, on the ground that such portions of the complaint are immaterial to any claim which the plaintiff may properly assert. And (3) motion to strike from the complaint under Rule 12 (f) the portions thereof which refer to other legal proceedings involving the Eastman Kodak Company, on the ground that none of such references to prior proceedings are within the purview of the Clayton Act, and none of these proceedings refer or relate to any of the claims or allegations of this complaint, and are immaterial and improper.

These motions are now before me for disposition.

Plaintiff at the outset contends that this litigation should not be decided on pleadings and that motions to strike are not favored by the courts, citing a number of cases in support of this contention, among them the case of Burke v. Mesta Machine Company, 5 F.R.D. 134, 139, where the

District Court for the Western District of Pennsylvania held:

"A motion to strike was never intended to furnish an opportunity for the determination of disputed and substantial questions of law, and, therefore, without attempting to pass upon the question whether the allegations of the Answer in this case to which the motion to strike is addressed, constitutes a defense and, without intimating that they do, I conclude only that the allegations are of such a character that their sufficiency ought not to be determined summarily upon a motion to strike and therefore, the plaintiffs' motion as it relates to the allegations in said Amended Answer is denied."

I do not believe that the question here involved is the same sort of disputed question of substantive law as the Pennsylvania Court had under consideration when it decided that the same should be decided only after a hearing on the merits. The plaintiff here insists that it has a right to bring its action in the public interest, although I have been unable to find any case which supports this contention and plaintiff has cited none to me. Defendants on the other hand insist that Section 4 of the Sherman Act, 15 U.S.C.A. §.4, and Section 15 of the Clayton Act, 15 U.S.C.A. § 25, very clearly and definitely provide that the Attorney General shall bring either civil or criminal actions on behalf of the public, and Section 4 of the Clayton Act authorizes a person "who shall be injured in his business or property" to bring a suit for treble damages and provides that he may recover such damages as have been "by him sustained," and therefore that all allegations purporting to assert claims on behalf of the public are immaterial to the question of plaintiff's damage and should be stricken.

■ This complaint is brought under Sections 4 and 16 of the Clayton Act, 15 U.S.C.A. §§ 15, 26, which authorizes a private person to sue on his own behalf for actual or threatened injury to his business or property and provides that he may recover damages by him sustained. There is nothing in this statute authorizing a private person to bring suit on behalf of the public or others for violation of the anti-trust laws and to obtain relief therefor. Section 4 of the Sherman Law and Section 15 of the Clayton Act charge the Attorney General with the duty of protecting the public interest by either civil or criminal action. The statute makes no provision for this function to be assumed by a private person. The courts seem consistently to have held that a suit may not be maintained by a private person merely because of violations of the anti-trust laws which have resulted in injury to the public. On the contrary a plaintiff must allege and prove that these violations have been the proximate cause of special injury to his business or property, as distinguished from injury resulting to the public generally. In Beegle v. Thomson, 7 Cir., 138 F.2d 875, 881, certiorari denied 1944, 322 U.S. 743, 64 S.Ct. 1143, 88 L.Ed. 1576, the court said:

"Section 15, allowing private parties treble damages for injury accruing to their business from violation of the Anti-Trust Act, embraces, as one of the essentials to such action, injury to plaintiff's business. The complaint must affirmatively show this injury. It is not enough to allege something forbidden and claim damages resulting therefrom. Allegation of the specific injury suffered by plaintiff differing from that sustained by it as a member of the community is essential. * * * the mere existence of a violation is not sufficient ipso facto to support the action."

Section 16 of the Clayton Act authorizes injunctive relief for private persons. The language of this section also provides that a plaintiff thereunder may obtain injunctive relief only against threatened special loss or damage to him, differing from the injury which may be suffered by the public at large. As contrasted with Section 4 of the Sherman Law and 15 of the Clayton Act authorizing the Attorney General to institute proceedings in equity "to prevent and restrain" violations, this section authorizes a person to sue for injunctive relief "against threatened loss or damage by a violation of the antitrust laws * * * when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity,

under the rules governing such proceedings * * *."

■ The rule in equity is that injunctive relief against threatened conduct that will cause loss or damage will not be granted where the injury complained of is a public injury, and the plaintiff cannot show that he suffers a special injury differing from that suffered by the public at large. Section 16 also authorizes relief only to prevent special injury to the plaintiff differing from the injury which may be suffered by the public at large and does not authorize a suit on behalf of the public. In Westor Theatres, Inc., v. Warner Bros. Pictures, D.C., 41 F.Supp. 757, 763, the court said:

"The complaint herein purports to allege a cause of action under the Sherman and Clayton Acts on behalf of individual plaintiffs. It seeks both legal relief by way of money damages and equitable relief by way of injunctions and orders of dissolution. The sole statutory authorizations for such a proceeding by individual plaintiffs are found in two provisions of the anti-trust laws, Sections 4 and 15 of the Clayton Act.

"Under both sections it is apparent that the individual cause of action contemplated is one arising by virtue of acts of the defendants, in violation of the anti-trust laws, which have been the proximate cause of injury to the plaintiffs in their business or property or which threaten to cause loss or damage to the plaintiffs. Hence, the only relevant issues are those involving conduct which proximately results in injury to the plaintiffs or which threatens such injury. An individual plaintiff is not entitled to sue by reason of violations resulting in injury to other persons or to the public. Correction of the latter evil is the function of the government alone."

Plaintiff alleges that it brings this action against Eastman on its own behalf and in the public interest, on the ground that the monopoly on amateur motion picture films, especially on double 8 mm. color films held by Eastman, and Eastman's system of allocating film through the channels of merchandising, effect discriminations in trade and cause injury to Revere, as well as to other manufacturers of cameras using double 8 mm. film, and to the public.

■ Plaintiff's case for treble damages must be predicated upon a showing that defendant has monopolized or attempted to monopolize trade or commerce among the several states; and that it has contracted, combined and conspired to restrain trade or commerce, in violation of the anti-trust laws, resulting in harm and injury to the public, and must then plead facts showing that such violations have been the proximate cause of injury, loss and damage to plaintiff in its business or property.

Plaintiff apparently agrees with this theory, because it admits that it is elementary anti-trust law that an injury to the public interest must be shown, citing the case of Neumann v. Bastian-Blessing Company et al., D.C., 70 F.Supp. 447, 448, decided in this court by Judge LaBuy, where the court said:

"The combinations and contracts in restraint of trade which were intended to be prohibited by the Sherman Act are combinations which are directed to the control of the market by suppression of competition in the marketing of goods and services, the effect of which is adverse to the consumer and the public. The practices prohibited by the Act are those that have an evil effect upon the public generally, as distinguished from purely personal or private injury."

From this plaintiff argues that in the instant case it is not only proper but implicit that it plead the public interest, and that in bringing this private anti-trust action it appears in court in the double capacity of representing itself and as a representative of the public interest; that the very purpose of the kind of action brought here is to use the private suit as an instrument for enforcing the anti-trust laws.

■ The anti-trust laws were enacted to prevent injury to the public as well as injury to individuals, but nowhere is the individual authorized to bring a suit on behalf of the public for the public injury. The Attorney General alone is authorized

by the statute to bring such suit, the individual being authorized to bring his own treble damage action for any injury he may have sustained as a result of a violation of the anti-trust laws. True, the cases have held that treble damage suits are intended as an ancillary and additional force to supplement law enforcement by the Department of Justice, but nowhere does the statute give to a private litigant authority to bring the action on behalf of the public. Weinberg v. Sinclair Refining Company, D.C., 48 F.Supp. 203. Plaintiff also cites the case of Maltz v. Sax et al., 134 F.2d 2, 4, decided by the Circuit Court of Appeals for the Seventh Circuit, where Judge Evans said:

"This grant to persons damaged (through an unlawful combination or conspiracy in restraint of commerce)—a cause of action for treble damages—was for the purpose of multiplying the agencies which would help enforce the Act and therefore make it more effective."

I cannot believe that this gives the plaintiff here because of its own alleged injury a right to plead the public interest. I am of the opinion that the law clearly establishes that plaintiff has no authority to sue on behalf of the public and others which it claims have been injured by defendants' alleged violations of the anti-trust acts. Defendant's motion to dismiss the claims on behalf of the public and of others alleged by plaintiff to have been injured is allowed.

On defendant's motion Number 2 to strike the allegations which purport to assert claims on behalf of the public and others: These allegations are immaterial to any claim which the plaintiff may have properly asserted. Whether or not the suit is in the public interest and whether the various unlawful acts alleged are injurious to other competitors or other manufacturers is immaterial to the question of whether the plaintiff here has suffered special injury for which he may recover treble damages or obtain injunctive relief under the provisions of the Sherman and Clayton Acts. This is also true of the allegation that "public policy" requires that Eastman be compelled to disclose its formulae, processes and "know-how" in the manufacture and sale of amateur color film.

Defendants' motion to strike from the complaint the allegations set out in the motion, which purport to set forth claims based on injury to others than Revere, on the ground that they are immaterial to any claim which Revere itself may assert on its own behalf, is allowed.

On defendants' motion to strike references to various other anti-trust cases, without showing their relevancy to this proceeding:

Paragraph 13 of plaintiff's complaint alleges:

"Eastman has attained its position in the industry by consolidation and merger, acquisition of business and assets and reorganization of various corporations, including competitors, as well as by growth and expansion. In attaining its dominant position, Eastman has frequently resorted to illegal trade practices which have involved it in numerous lawsuits including several under the anti-trust laws of the United States."

The complaint then goes on to cite five cases in which Eastman appeared as a party. The courts have held that allegations regarding prior litigation are·improper and immaterial in the absence of some showing either of materiality to the issues to be tried or that they constitute a prima facie case against defendant under Section 5 of the Clayton Act, which provides:

"A final judgment or decree rendered in any criminal prosecution or in any suit or proceeding in equity brought by or on behalf of the United States under the anti-trust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any suit or proceeding brought by any other party against such defendant under said laws as to all matters respecting which such judgment or decree would be an estoppel as between the parties thereto: Provided, This section shall not apply to consent judgments or decrees entered before any testimony has been taken."

In Mebco Realty Holding Co. v. Warner Bros. Pictures, Inc., 6 F.R.S. 12 f 21, Case No. 1, plaintiff attempted to make the same general use of prior anti-trust cases as in the case at bar, the complaint containing the following allegation:

"Various courts of the United States at various times have found that defendant Producers and defendant Distributors have acted in concert and conspired together to have performed acts in violation of the Sherman Act and Clayton Act aforesaid."

The court granted defendant's motion to strike this allegation, saying:

"These statements, unless material or pertinent to the issue to be tried, ought to be stricken under the provisions of Rule 12 (f) of the Federal Rules of Civil Procedure. I have heard the arguments and have read the briefs. There is nothing asserted which convinces me that what has happened to the producers or distributors in former cases in any court can have any legal effect in the instant action. An attempt to answer that paragraph would mean that every defendant would have to set out and analyze each case of similar character in which it might have been involved. If the paragraph had set out the specific cases as applicable to each defendant it would be a good pleading if at all applicable.

"I hold that in either case it is an improper pleading and should be stricken."

Sinaiko Bros. Coal and Oil Company v. Ethyl Gasoline Corporation, D.C., 2 F.R.D. 305, was a suit for treble damages, and plaintiff pleaded the Government's charges in a prior suit against defendant and the result of the suit. The court held that under the statutory provision that an adjudication under anti-trust laws to the effect that defendant had violated the laws shall be prima facie evidence against defendant, plaintiff, suing for damages under the Clayton Act, could not plead a prima facie case if he did not set forth the charges in the Government's suit against the defendant and the result of that suit.

Defendants' motion No. 3 to strike from the complaint reference to other proceedings involving the Eastman Kodak Company is allowed.

Plaintiff is given thirty days in which to amend its complaint if it so desires.

If plaintiff does not elect to amend, then defendants are given thirty days in which to answer.