DISTRICT OF COLUMBIA CITIZEN PUB. CO. et al. v. MERCHANTS & MANUFACTURERS ASS'N, Inc. et al.

Civ. A. No. 2118-48.

United States District Court District of Columbia.

April 30, 1949.

Eugene E. Ditto, Washington, D. C., Harold L. Schilz, Washington, D. C., for plaintiffs.

John J. Carmody, Washington, D. C., Jo V. Morgan, Jr., Washington, D. C., for defendants Merchants & Manufacturers Ass'n, Inc., and the Hecht Co.

Leon Tobriner, Washington D. C., Gilbert Hahn, Jr., Washington, D. C., for defendants Kann, Inc., A. Kahn, Inc., and Young Men's Shop.

Hogan & Hartson, Washington, D. C. (Joseph J. Smith, Jr., Washington, D. C.) for defendant Woodward & Lothrop.

MOORE, District Judge.

Plaintiffs have brought an action against defendants for treble damages, alleging violation of Sections 1, 2 and 3 of the Sherman Anti-Trust Act, 15 U.S.C.A. § 1 et seq., and consequent injury to plaintiffs.

Motions to dismiss filed by each of the defendants are pending, as well as a motion for summary judgment filed by plaintiffs. Argument on all these motions was heard at the same time by the Court. The motions to dismiss are based on numerous grounds, but this opinion will deal only with the first, which is, in each motion, that the complaint fails to state a claim against the respective defendants upon which relief can be granted.

The substantial allegations of the complaint may be briefly summarized as follows:

Plaintiff District of Columbia Citizen Publishing Company is the publisher of the District of Columbia Citizen, a monthly newspaper with general circulation in the District of Columbia and elsewhere, which derives its income largely from advertising. Plaintiff Paul P. Walsh was for a time the owner and publisher of this newspaper, having transferred his rights therein to the corporate plaintiff in March, 1948.

Defendant Merchants and Manufacturers Association, Inc., is a trade association in the District of Columbia. The other defendants are alleged to be members of this trade association.

The Association maintains a committee on donations and advertising, whose decisions are alleged to control the advertising policy of the members of the Association. This committee is alleged to maintain an approved list of newspapers and publications in which it allows members of the Association to advertise. The members of the Association are alleged to comply with a rule of the Association that they will not

advertise in any publication not approved by the committee. Solicitations for advertising by agents of the District of Columbia Citizen directed to members of the Association have been referred by them to the committee, which, it is alleged, has refused to approve such advertising, and thereafter advertising has been declined by these Association members. The refusal is alleged to be arbitrary and capricious, and for the purpose of injuring and destroying competition, and potential competition of the District of Columbia Citizen with other publications, "and some in which some of the said defendants and co-conspirators have a financial interest."

The District of Columbia Citizen is alleged to be an attractive newspaper comparing favorably in its essentials with any "specific purpose" tabloid newspaper or trade publication published on a weekly or monthly basis in any comparable metropolitan area. Its advertising is alleged to be well presented, and advertisers are alleged to have expressed satisfaction with its services. Its mail circulation is 15,000 copies, part of which go into interstate commerce; in April, 1948, it distributed 36,000 copies. It is alleged that the circulation would be much larger and more widespread but for the so-called boycotting or blacklisting by defendants, which, it is alleged, has diminished its circulation, impaired its prestige, and caused it heavy financial loss because of its failure to obtain advertising which it would have otherwise obtained.

For the purpose of passing on the motions to dismiss, the foregoing factual allegations of the complaint will be treated as true.

Section 1 of the Sherman Act makes combinations in restraint of interstate commerce unlawful; Section 2 extends the ban to monopolies and attempts to monopolize any part of interstate commerce; and Section 3 makes the prohibitions of Section 1 applicable to commerce in the District of Columbia.

While all monopolies involve restraints of trade, there may be restraints of trade which are not monopolistic. Consideration of this motion, therefore, involves two inquiries; first, whether the allegations, if true, show that the defendants monopolized or attempted to monopolize any part of interstate commerce; and secondly, if not, do they show that defendants combined to restrain trade in the District of Columbia, or in interstate commerce?

Obviously, the acts charged to defendants do not tend to create any monopoly of the newspaper publishing business on the part of defendants. They are not engaged in that business. It is alleged that some of them have a financial interest in some other publications; but the extent of this interest is not shown, nor is it alleged that defendants or any of them advertise in these other publications, or that any of them are on the committee's so-called approved list. None of the evil effects which are inseparably connected with monopolies can be reasonably expected to result from the mere agreement of defendants not to advertise in this small monthly newspaper.

Although not alleged, it is a matter of common knowledge that there are in the District of Columbia many large daily newspapers engaged in the dissemination of news and advertising matter to the public. It would strain the imagination to say that the reduction in circulation of a small monthly newspaper such as the District of Columbia Citizen could substantially affect the business of these daily newspapers one way or the other. The only possible monopolistic tendency would be in relation to other publications of similar character to the District of Columbia Citizen; and it is not alleged that defendants are interested in the publication of any such newspapers, or even that any exist.

It is alleged in the complaint that the defendants and nineteen other of the larger and more important retail and department stores in Washington have engaged in wrongful and unlawful attempts to monopolize the circulation of advertising within the District of Columbia and in interstate commerce; but such allegations are clearly without basis in the facts alleged to support the charge. The complaint states that the method employed to effect this monopoly is the boycotting of plaintiffs' newspaper by refusal to advertise in it. There

is no allegation that more than twenty-four stores refused to advertise in the District of Columbia Citizen. There is no allegation that the defendants or any of the other nineteen stores attempted to coerce, induce or in any way influence other stores in the placing of advertising in the plaintiffs' newspaper, or any other newspaper in the District of Columbia. The complaint itself refutes this charge in alleging that persons and stores that have placed such advertising have expressed satisfaction. In the absence of any allegation to the contrary, it must be assumed that these satisfied patrons are continuing to place advertising in the paper, without any threat of retaliation by the defendants in this suit. The only thing shown in the complaint in support of the charge of monopolization of advertising, is the mere refusal of approximately twenty-four concerns, out of the thousands of potential advertisers in the city of Washington and elsewhere to advertise in the District of Columbia Citizen. I hardly think that this is sufficient to indicate an attempt to monopolize advertising on the part of the defendants. Moreover, the mere withholding of advertising, without an accompanying intention to place such advertising elsewhere, in some publication which would not otherwise have carried it, could have no tendency to create a monopoly.

■ Viewing all the allegations in their most favorable light from the standpoint of the plaintiffs, no element of monopoly is discernible, or at most it is so slight as to be negligible.

I am therefore of opinion that the complaint does not state any facts which tend to show that the defendants or any of them have monopolized, or attempted to monopolize, or combined to monopolize, any part of interstate commerce.

■ Whether the complaint shows facts which could warrant a conclusion that defendants have combined to restrain trade is a question which presents more difficulty. It is well settled that in actions of this nature the complaint must be construed with great liberality. However, although plaintiffs have great latitude, it still is necessary, in order successfully to resist a motion to dismiss, that they allege facts sufficient to justify the Court in requiring defendants to answer the complaint.

■ It has been well said that the end sought by the Sherman Act was: "* * * the prevention of restraints to free competition in business and commercial transactions which tended to restrict production, raise prices or otherwise control the market to the detriment of purchasers or consumers of goods and services, all of which had come to be regarded as a special form of public injury." Apex Hosiery Co. v. Leader, 310 U.S. 469, 60 S.Ct. 982, 992, 84 L.Ed. 1311, 128 A.L.R. 1044. At another point in the same case Mr. Justice Stone pointed out that it has been "repeatedly recognized that the restraints at which the Sherman law is aimed, and which are described by its terms, are only those which are comparable to restraints deemed illegal at common law"; and he mentions as such, "contracts for the restriction or suppression of competition in the market, agreements to fix prices, divide marketing territories, apportion customers, restrict production and the like practices which tend to raise prices or otherwise take from buyers or consumers the advantages which accrue to them from free competition in the market." Ibid.

■ In short, it is the public interest which is protected by the Act. The right of an individual to sue for a private injury is conditioned upon and limited by the presence in the circumstances of a public detriment or injury, without which, although there may exist an actionable wrong, the individuals right to redress cannot be asserted by virtue of the Sherman Act. Prairie Farmer Pub. Co. v. Indiana Farmer's Guide Pub. Co., 7 Cir., 1937, 88 F.2d 979, certiorari denied, Indiana Farmer's Guide Pub. Co. v. Prairie Farmer Pub. Co., 301 U.S. 696, 57 S.Ct. 925, 81 L.Ed. 1351; Glenn Coal Co. v. Dickinson Fuel Co., 4 Cir., 1934, 72 F.2d 885; Shotkin v. General Electric Co., 10 Cir., 1948, 171 F.2d 236; Swartz v. Forward Association, D.C.Mass.1941, 41 F. Supp. 294.

It is true that there are certain types of combinations or restraints which are

998

deemed to be illegal per se and no detriment to the public need be shown. However, in this type of case the injury to the public is presumed from the very nature of the restraint, even though the proof may be to the contrary. United States v. National Lead Co., D.C.N.Y.1945, 63 F. Supp. 513, affirmed 332 U.S. 319, 67 S.Ct. 1634, 91 L.Ed. 2077; United States v. Aluminum Co. of America, 2 Cir., 1945, 148 F.2d 416.

■ Trade associations such as the Merchants and Manufacturers Association, Inc., serve a useful purpose in the economic life of any community. Naturally, whatever actions such associations may engage in for the general welfare of their members is concerted action; and it is difficult to imagine any act relating to the general business practices of members of the association which would not in some degree put a restraint upon trade; but a restraint of trade, to be actionable, must be an unreasonable restraint. Standard Oil Co. of New Jersey et al. v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619, 34 L.RA.,N.S., 834, Ann.Cas.1912D, 734; Appalachian Coals, Inc., et al. v. United States, 288 U.S. 344, 53 S.Ct. 471, 77 L.Ed. 825; Sugar Institute, Inc., et al. v. United States, 297 U.S. 553, 56 S.Ct. 629, 80 L.Ed. 859. It must either be unlawful in itself, or else it must tend naturally to produce one or more of the evils with relation to the public which have already been cited, and which it was the purpose of the Sherman Act to prevent. Aside from such acts, whatever an individual may lawfully do in his dealings with others when acting alone may also be lawfully done by a combination of persons. Standard Oil Co. of New Jersey et al. v. United States, supra; United States v. Reading Company, 226 U.S. 324, 369, 33 S.Ct. 90, 57 L.Ed. 243. It cannot be doubted that a single advertiser has complete liberty of action to decide for himself whether he will or will not place advertising with a particular newspaper publisher. There is nothing unlawful per se in the maintenance by a trade association of a committee for the purpose of making decisions for or recommendations to its members with reference to what advertising media may be useful or advantageous. In the absence of facts alleged in the complaint on which to base the conclusion of plaintiffs that the agreement not to advertise in the District of Columbia Citizen was arbitrary and capricious and for the purpose of preventing competition with other publications, the Court must conclude from a consideration of the entire complaint and from general knowledge of the functions of trade associations that the committee was actuated by a proper and lawful purpose; and indeed it is quite natural that merchants in the city of Washington would agree that there is no advantage to them in advertising in a small monthly newspaper such as we have here. The situation is no different from that which would result if the publication denied approval were a theatre program, a city directory, or one of those pamphlets usually found in hotels whose purpose is to apprise guests of current events of interest. Whatever element of restraint of trade may be present in committee disapproval of advertising in such publications is not, in my opinion, of such nature or degree as to warrant the characterization of unreasonableness.

■ What we have here is simply a case of a trade association, in the exercise of a lawful function and for the benefit of its members, declining as an association to advertise in plaintiffs' newspaper. Plaintiffs may be injured thereby, and the circulation of the newspaper may be seriously impaired and its profits reduced; but in my opinion there does not follow as a natural result any detriment or injury to the public in restriction or suppression of competition, or in any other of the numerous evil results against which protection is afforded by the Sherman Act.

It is my conclusion that the complaint when construed as liberally as it may be for the plaintiffs does not state a cause of action under the Sherman Act. In view of this conclusion, it is unnecessary to deal with any other grounds of the several motions to dismiss, or with plaintiffs' motion for a summary judgment.

Therefore, the several motions to dismiss the complaint will be sustained. An appropriate order may be submitted for entry.