**SLICK AIRWAYS, Inc.**
v.
**AMERICAN AIRLINES, Inc. et al.**
No. C 317–50.

United States District Court,
D. New Jersey.
Jan. 9, 1954.

Minton, Dinsmore & Lane, Trenton, N. J., by Arthur S. Lane, Trenton, N. J., (Steptoe & Johnson, Washington, D. C., Arnold, Fortas & Porter, Washington, D. C., of counsel), for plaintiff.

Morrison, Lloyd & Griggs, Hackensack, N. J., (Debevoise, Plimpton & McLean, New York City, of counsel), for American Airlines, Inc.

Stryker, Tams & Horner, Newark, N. J., (Mayer, Meyer, Austrian & Platt, Chicago, Ill., of counsel), for United Airlines Corp.

Katzenbach, Gildea & Rudner, Trenton, N. J., (Chadbourne, Wallace, Parke & Whiteside, New York City, of counsel), for Transcontinental & Western Air, Inc.

Pitney, Hardin & Ward, Newark, N. J., for Air Cargo, Inc.

FORMAN, Chief Judge.

The general purpose of the complaint in this suit under the antitrust laws is set forth in an opinion filed herein on June 7, 1951, Slick Airways v. American Airlines, D.C., 107 F.Supp. 199.

The defendants, American Airlines, Inc., United Airlines Corporation, Transcontinental & Western Air, Inc., and Air Cargo, Inc., claim that certain portions of that complaint are violative of the provisions of Sections (a) and (e) of Rule 8 of the Federal Rules of Civil Procedure, 28 U.S.C.A., and pursuant to Rule 12(f) thereof they are moving to strike them from the complaint.

The general rule which guides courts in the consideration of motions to strike matter from pleadings in modern times and particularly in actions predicated on violations of the antitrust laws is one which advocates caution and reluctance to so purge pleadings unless it is clear that the matter to which objection has been taken has no possible bearing upon the subject matter of the litigation.

" 'This court,' Judge Delehant has said [in Sinkbeil v. Handler, D.C.,

7 F.R.D. 92] 'acknowledges its entertainment of considerable sympathy with the thought that, short of abuse or practical impropriety, a reasonable latitude should be allowed to a pleader in the statement of his claim or defense; and that not every dubious or errant phrase in a pleading should be eradicated from it to suit the taste of a critical adversary. In practice, what matters is not alone whether the phrase is immaterial, but whether its presence, if it be immaterial, is calculated to be harmful.' And where certain evidential facts, when read with the complaint as a whole, give a full understanding thereof, they need not be stricken. In suits involving multiple and complex issues greater latitude in pleading may be allowed since the impertinence may not be so clear." 2 Moore's Federal Practice, 2nd ed. 2318.

But in Garbose v. Giles Co., 12 F.R.S. 8a.464, Case 1, page 57 (1949), the court was moved to say:

"Jury trials in these civil actions growing out of Anti-Trust laws present problems of peculiar difficulty to counsel, to the court, and to the jury. The experience that this court has had in the Momand litigation and the experience that other courts had with it have led me, and perhaps some of my brethren, to take the view that the complaint, as well as other pleadings, must be drawn in strict conformity with the Federal Rules of Civil Procedure. The statements should be as simple, clear, and concise as indicated by Rule 8 and by forms of complaint set forth in the Appendix to the Rules. Departure from that requirement is apt to work an injustice and to impose undue burden upon the trial court and upon the appellate courts."

It would appear, then, that pleadings should not be whittled away where the

material averred, while not strictly within a rigid interpretation of the rules, is helpful in outlining the background against which the action is laid, particularly, where those allegations are factual and will not impose hardship upon the adverse party to answer or otherwise prejudice him. It is equally obvious that the introduction into the complaint of extensive purported evidence and argument and the injection of issues remote from the claim of the plaintiff can serve to lead into tributaries away from the main stream of litigation frustrating the purpose to reduce it to its simplest terms and avert unnecessary expenditures of large amounts of time, money and effort, usual concomitants of court controversies even when most expeditiously administered.

▆ It is also well to have in mind that the plaintiff in a private action for damages under the antitrust laws may not assume the role of the Attorney General of the United States to prosecute the defendants for the injury the public has sustained through alleged violations of such laws and to obtain relief therefor. Revere Camera Co. v. Eastman Kodak Co., D.C.N.D.Ill., 1948, 81 F.Supp. 325.

Nevertheless as was stated in Shotkin v. General Electric Co., 10 Cir., 1948, 171 F.2d 236, 238–239:

"It is essential to recovery in an action of this kind that plaintiff allege and prove two things, a violation of the Act, and damages to plaintiff proximately resulting from the acts and conduct of the defendants which constitute the violation of the Act. Injury to plaintiff, of itself and alone, is not sufficient to warrant a civil action of this nature for injunctive relief and damages. There must be harm to the general public in the form of undue restriction of trade and commerce as the result of the wrongful contract, combination, or concert."

and in District of Columbia Citizen Pub. Co. v. Merchants & Mfrs. Ass'n, D.C., 1949, 83 F.Supp. 994, 997

"In short, it is the public interest which is protected by the Act. The right of an individual to sue for a private injury is conditioned upon and limited by the presence in the circumstances of a public detriment or injury, without which, although there may exist an actionable wrong, the individuals right to redress cannot be asserted by virtue of the Sherman Act."

To start with defendants submit that the first sentence of paragraph 6 makes reference to the defendants as having been engaged since 1938, in monopolizing or attempting to monopolize "air transportation" in general and that in paragraphs 11 and 14 they, with others, engaged in contracts to carry "property" other than mail only when tendered for carriage by the Railway Express Agency, which contract provisions were ordered stricken by the Civil Aeronautic Board in 1943.

The defendants further assert that the plaintiff has brought forward other charges which they claim to be even more remote from the cause of action of the plaintiff in allegations that "not a single carrier has gone into bankruptcy or been reorganized contrary to what would have been the case but for this subsidy" (paragraph 21); that defendants and others opposed the entrance into aviation of the so called feeder lines, although the obvious purpose behind the certification of feeder lines was the creation of additional passenger traffic (paragraph 22); that steamship lines and railroads which did not receive operating air rights have sustained injury (paragraph 23); that the defendants have opposed the entrance of freight forwarders into aviation (paragraphs 24 and 38); that the defendants have attempted to drive the Railway Express Agency out of air transportation (para-

graph 25); that they opposed the entrance into aviation of the new so-called "irregular" or coach type passenger carriers (paragraph 26); that the defendants attempted to repel all parties who have sought to enter the industry (paragraph 27); that the defendants and their representatives furthered the conspiracy to keep all newcomers out of the [aviation] industry (paragraphs 28, 4th, 5th, 6th and 7th sentences); that their motives for exclusion of plaintiff and other carriers were enlarged because of hazards presented by plaintiff and others to their alleged government subsidy (paragraph 29, 2d, 3d and 4th sentences); and that one of the defendants, American Airlines, Inc., used its Contract Air Cargo Division to harass other independent carriers (paragraph 35, last two sentences).

The defendants argue that in so framing its allegations plaintiff is attempting to draw them into litigation in this case on their alleged acts in the general broad field of "air transportation" and that their alleged acts in areas other than air freight have no bearing upon plaintiff's claim for relief and introduce collateral issues not cognizable in this proceeding.

The defendants also stress that the plaintiff pleads that it was organized in January, 1946 and that it began business in March, 1946, and particularly alleges in paragraph 7 of its complaint that

"The period of time covered by this complaint begins on or about the middle of the calendar year 1946 and continues through the years following up to and including the date upon which this complaint is filed."

Therefore defendants argue that allegations of events which occurred prior to 1946 are likewise impertinent and immaterial to plaintiff's claim.

The defendants also take exception to the references by plaintiff in the complaint to freight carriers other than the plaintiff and injury and damage allegedly suffered by them, contending that even though they were established they could add nothing to plaintiff's case, would prove prejudicial to the defendants and are immaterial and impertinent.

The plaintiff supports all of its allegations on the grounds, among others, that it can show that the defendants have combined to exclude every potential entrant into aviation since 1938 and this is relevant on the subject of whether or not they have combined to exclude plaintiff; that its references to other "freight carriers" were not made with any intent to recover for injuries done to them but that its exclusion from air freight was not the only objective of defendants' conspiracy and hence it would be inaccurate to describe defendants' conspiracy to monopolize air freight without referring to other carriers and that furthermore it would be equally inaccurate to refer to the conspiracy to monopolize air freight except as part of the conspiracy to monopolize air transportation in general.

■■ I am persuaded that the numerous allegations by plaintiff of actions allegedly engaged in by defendants at a time long prior to the organization of the plaintiff and its entrance into the business of transporting air freight are not properly pleaded in this complaint. Nor are the activities allegedly directed at other parties to restrain them from engaging in air transportation generally, appropriate here. The defendants are entitled to be furnished with a plain statement of the claim of *the plaintiff*. Certainly tolerance must be granted for such allegations of background as will facilitate an understanding of the cause of action which the plaintiff is pleading. To extend this to permit the narration of matter which if it is to come into the case at all can only do so as admissible evidence would be to put the defendants to the task of answering extraneous material and may very well lead to the trial of issues quite apart from plaintiff's claims for injury. Although plaintiff claims that all of its allegations concern only one long stand-

ing conspiracy it would appear that more liberal treatment of the allegations in question might well expose for trial a number of separate conspiracies. It is to be remembered that this consideration of the motion does not contemplate rulings upon the admissibility of the evidence. It is simply a determination that the allegations in question are immaterial and impertinent. They are unessential to the complaint of the plaintiff and defendants' motion to strike them will be granted.

In paragraph 9 the plaintiff refers to its survival as being in the public interest and in the fourth sentence of paragraph 16 the plaintiff recites that other companies were forced to discontinue business in 1948 by reason of unlawful acts by defendants. Paragraph 18 cites the economic advantages that will flow from a well developed air freight service. In paragraph 19 it describes the assistance that would inure to the national defense therefrom. The defendants contend that these allegations are immaterial to the claim of the plaintiff and their motion to strike them will be granted for that reason.

In paragraph 20 the plaintiff asserts that the foregoing and other public advantages are the potential of an independent unsubsidized airline committed solely to the carriage of air freight. It is argumentative and alleges immaterial matters which the defendants should not be required to answer. Their motion to strike it must be granted.

Among others, paragraphs 12 and 49 and the first sentences of paragraphs 13 and 43 are attacked by the defendants for the reasons that they are general and fail to state facts which warrant an answer to them. In paragraph 12 and the first sentence of paragraph 13 plaintiff relates that many of the methods of air transportation of cargo devised in World War II were believed to be applicable to commercial peace time use. The first sentence of paragraph 43 is a conjecture that the costs of the defendants' freight opera-

tions would have been extremely high. In paragraph 49 plaintiff reiterates general allegations of interference by defendants with the development of its business regardless of other considerations. Each of these allegations is vulnerable to attack for one or more or all of the reasons that it is general, repetitious, immaterial or impertinent and the defendants' motion to strike them will be granted.

In the second sentence of paragraph 15 plaintiff describes the property with which it started business. It mentions one million dollars, among other property, which it qualifies as being in private money "neither supplied from nor induced by the prospect of Government subsidy." Defendants' motion to strike the quoted words as impertinent will be granted.

Plaintiff commenced paragraph 40 with the words "Emboldened by the failure of the CAB to take action in response to plaintiff's petition for suspension * * *" It is understandable how such comment of a draftsman will creep into a complaint in a case of this type, but it must wilt under the objection as being impertinent and the defendants' motion to strike it will prevail.

Defendants also complain that the allegations of paragraphs 57 and 59 are broad generalizations containing no material averments not elsewhere set forth in the complaint. In them plaintiff makes assertions that defendants' efforts to drive it out of business have not been limited to the other allegations but that plaintiff knows of instances when improper acts were performed in furtherance of the conspiracy and various unlawful and unfair trade practices which were employed by defendants. As contended by the defendants these generalizations add no supportive allegations to the complaint and must be stricken.

In paragraph 58 plaintiff alleges handicaps under which the Civil Aeronautics Board operates which plaintiff charges induced the defendants to en-

gage in unfair practices. The defendants submit that these allegations are objectionable on the same grounds as those suggested for paragraphs 57 and 59. The conditions described by the plaintiff as hampering the activities of the Civil Aeronautics Board may not be projected as an issue in this lawsuit. Motives, intent and inducement to conspire against the plaintiff must be laid on other grounds susceptible of answer by the defendants. The motion to strike paragraph 58 will likewise be granted.

■ The defendants also object to the allegations by plaintiff that they attempted to waste the resources "of other freight carriers" and to cause them to operate at a loss (paragraph 6a); that it was the design of the defendants to drive them out of business (paragraph 6, last line); that they resolved to bar from aviation new and "other independent carriers" in 1946 (paragraph 29, first line); that American Airlines, Inc., through its Contract Air Cargo Division, allegedly had for its real purpose the destruction of other independent all freight airlines (paragraph 35, third line); that the defendants were responsible for many changes in rates which served to undermine confidence of the public in the air freight industry to the damage of "other all-freight carriers" (paragraph 47, last line).

In each of the allegations mentioned in the foregoing paragraphs plaintiff has included others with itself as feeling the effects of the alleged activities of the defendants. In each instance aforesaid the plaintiff is speaking of the alleged contemporary conspiracy or acts associated with it, and charging that others were allegedly victimized by the conspiracy along with plaintiff. Such a state of facts is pertinent and material to the claim of the plaintiff. They are susceptible of answer by the defendants. The motion to strike these references will be denied.

■ Defendants object to the allegations of paragraph 42 as containing references to subsidy arrangements with the government. In it the plaintiff contrasts the defendants' financial position with its own, as described in paragraph 41. The defendants take the position that the rate of compensation for the transportation of mail is a function exclusively reposed in the Board, not cognizable in this action by the court and impertinent. They also urge that the allegations are so general and indefinite as to be almost impossible to answer and that they are speculative, and otherwise objectionable. It is true that plaintiff has charged in this paragraph that the defendants have hidden their losses on freight-carriage in overall losses or made them up out of other profits or out of subsidy payments by the United States. This does not raise any issue as to the validity of payments made to the defendants by the government. It merely presents an accusation of methods and means employed by defendants to suffer losses themselves in the carriage of air freight allegedly at levels designed to be ruinous to the plaintiff if it competed with them so that it would be driven out of business. The allegations in the paragraph are fairly general and indefinite, but they lend themselves to answer and of course will be susceptible of discovery for the purpose of requiring the plaintiff to pin point them. The motion of the defendants to strike paragraph 42 will be denied.

■ Paragraph 46 makes allegations that the defendants took certain inconsistent positions regarding air freight rates at various hearings before the Civil Aeronautics Board with the design that the air freight business could not be conducted on a sound economic basis until plaintiff and others are driven from the business. The defendants object to this paragraph. For the same reasons as have been stated in connection with the objections to paragraph 42 this paragraph may stand. It will present an issue on the methods of the alleged conspiracy but not a review of any administrative agency determination. There-

fore the motion to strike paragraph 46 will be denied.

█ Defendants object to the last clause in paragraph 52 which avers that defendants made an effort through Congressional appearances and public statements to create a background of Congressional and public sentiment which would influence the Civil Aeronautics Board in one of its determinations. This averment will not bring into issue the right of the defendants to petition Congress or the determination of the Civil Aeronautics Board, as defendants suggest in their objection. It rather falls into the recital of ways and means in which allegedly the defendants are said by the plaintiff to have violated the antitrust laws in conspiring against the plaintiff. The defendants' motion to strike this portion of paragraph 52 will be denied.

█ Defendants object to the plaintiff's references in the second sentence of paragraph 10 and the last line of pragraph 62, which bear upon the alleged detriment to the public interest arising out of the activities of the defendants of which plaintiff complains. While the allegations contained in these paragraphs to which defendants have objected are highly general in character it is essential for plaintiff to show that the defendants violated the antitrust laws to the damage of the plaintiff and the public as well. Hence these allegations will be permitted to stand and the defendants' motion to strike the material set forth in paragraphs 10 and 62 will be denied.

The defendants also object to paragraph 6 of the prayer for relief which asks that the appropriate orders be made from time to time concerning defendants' activities as may be deemed necessary to guard the public interest against violation of the antitrust laws. This request is clearly not in the province of plaintiff to make in this suit, since its claim for relief is confined to its own damages and it may not take upon itself the burden of protecting the public, a function to be performed by the Attorney General as provided by law.

Defendants have withdrawn their objections to paragraphs 6(b), 50 to 56, inclusive, and references in paragraph 67.

To summarize, the motion of the defendants to strike the following paragraphs or portions thereof, of the complaint herein, will be granted:

Paragraph

6—The first sentence.

9—So much of the last sentence as begins with the words "and to protect * * *"

11—The last two sentences in the last nine lines.

12.—In entirety.

13—First, fourth, fifth and sixth sentences.

14—The first sentence.

15—The words "neither supplied from nor induced by the prospect of Government subsidy" in the second sentence.

16—The fifth sentence beginning with the words "The failure".

28—The last 4 sentences.

29—The second, third and fourth sentences.

18 to 27, inclusive—In entirety.

35—The last two sentences.

40—The first clause beginning with the word "Emboldened" and ending with the word "suspension" in the first sentence.

43—The first sentence.

48—In entirety.

49—In entirety.

57 to 59, inclusive—In entirety.

The sixth paragraph of the Prayer for Relief.

The motion to strike is denied as to the following paragraphs or portions thereof:

Paragraph

6(a)—The words "and other freight carriers".

 

6 —The last words "and other freight carriers from the business".

10 —The second sentence.

29 —The words "and other independent carriers" in the first sentence.

35 —The words "and other independent all-freight airlines" in the second sentence.

42 —In entirety.

46 —In entirety.

47 —The last words "and other all-freight carriers who were dependent upon air freight" in the last sentence.

52 —The last clause beginning with the words "an effort".

62 —The last words "and to the public interest as well".

67 —The last words "and to serve the public in the manner which the public and the business require".

An order should be submitted in accordance with the foregoing.